UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

G.K.C. (XXX-XX-4255)            CIVIL ACTION NO. 14-cv-0999

VERSUS            JUDGE HICKS

SOCIAL SECURITY ADMINISTRATION            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

G.K.C. ("Plaintiff") filed an application for disabled widow's benefits, which required that she establish disability under the usual standards. Plaintiff was born in 1958, she has a high school education, and she has job experience that includes working in a school cafeteria and as an assistant manager at a Dollar General store. Her first husband died in 1987 in an oil rig accident. She remarried and moved to Louisiana when her second husband's job transferred here. She did not work after moving to Louisiana, which she blamed on physical problems including a pinched nerve. Plaintiff's second husband passed away in June 2011, and she applied for disability benefits based on his earning record.

ALJ Elizabeth B. Dunlap held a hearing and issued a written decision that found that Plaintiff was not disabled. The Appeals Council denied a request for review, and Plaintiff filed this action seeking judicial review of the Commissioner's final decision. Plaintiff argues on appeal that (1) the ALJ did not accurately include all of Plaintiff's mental limitations in her assessment of Plaintiff's residual functional capacity ("RFC") and (2) the

ALJ failed to adequately develop the record with respect to records of a treating physician. For the reasons that follow, it is recommended the Commissioner's decision be affirmed.

**Relevant Medical Evidence**

Plaintiff's principal complaint is that the ALJ did not adequately include in her RFC (and a hypothetical question to a vocational expert) Plaintiff's limitations with respect to concentration, persistence, and pace. One of the reports that the ALJ considered was that of psychologist Dayna Nelson, Psy.D., who conducted a consultative examination. Dr. Nelson interviewed Plaintiff and subjected her to a number of psychological tests. Plaintiff told Dr. Nelson that she had her first panic attack in 2006 while driving over the Cross Lake bridge and continues to have them while driving on main roads, but she never drives alone. She said she needed someone with her because the attacks make her black out. Plaintiff said she was unable to work because, "I can't drive to work without someone with me because I panic." Plaintiff reported being able to clean house, grocery shop, and care for herself. She was able to attend church and visit friends at her house. Plaintiff said she takes longer to complete tasks due to poor concentration.

Dr. Nelson's diagnosis was panic disorder without agoraphobia, alcohol abuse, and bereavement. She found that Plaintiff "would likely remember and understand how to carry out verbal instructions, and follow a simple routine task or procedures." She found that Plaintiff's attention and concentration skills "were mildly impaired by her anxiety," and her complaints of depressive episodes and anxiety "may interfere with appropriate persistence and pace of work." Tr. 280-83.

State Agency psychological consultant Cheryl Marsiglia, Ph.D., reviewed the records in April 2012 and made findings that Plaintiff's ability to carry out very short and simple instructions was not significantly limited, and Plaintiff was only moderately limited in the ability to carry out detailed instructions. Plaintiff also had a moderate limitation in the ability to maintain attention and concentration for extended periods. Dr. Marsiglia wrote that Plaintiff's functioning would likely be compromised some during times of mood instability, but she "should have no difficulty with simple instructions, working next to others, sustain ordinary routine, etc." She also wrote that Plaintiff's limitations would not preclude her from "sustaining the mental demands associated with the performance of simple, routine tasks throughout an ordinary work day/work week." Tr. 95-97.

**The ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in cases such as Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). She found that Plaintiff had not engaged in substantial gainful activity (step one) and suffered from emphysema, obesity, bereavement, alcohol abuse, and panic disorder without agoraphobia, which were severe within the meaning of the regulations (step two), but not so severe as to meet the demands of a listed impairment (step three) that would require a finding of disabled without further evaluation.

During the ALJ's listing assessment at step three, she looked the extent of mental impairments in several areas of functioning, including maintaining concentration, persistence, or pace. She found that Plaintiff had moderate difficulties in this area, noting Dr. Nelson's observation that Plaintiff's concentration skills were mildly impaired during oral testing. The ALJ made clear that her discussion at this stage was not an RFC assessment but was used only to rate the severity of the mental impairments at steps two and three of the analysis. Tr. 14.

The ALJ then turned to the RFC, which is a determination of the most the claimant can still do despite her limitations. 20 C.F.R. §§ 404.1520(a)(4) and 404.1545(a)(1). The claimant's RFC is then used at steps four and five to determine if the claimant can still do her past relevant work or adjust to other jobs that exist in the national economy. 20 C.F.R. § 404.1520(e).

Determining a claimant's RFC is the ALJ's responsibility. Ripley v. Chater, 67 F.3d 552, 557 (5th Cir.1995). "The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." Gonzales v. Astrue, 231 Fed. Appx. 322, 324 (5th Cir. 2007). This includes the authority "to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990), quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985).

No doctor's opinion is, alone, conclusive as to the RFC, and "the ALJ's RFC assessment need not match with precision to any medical source opinion." Cunningham v.

Astrue, 2011 WL 3651026, *7 (D. Utah 2011). The ALJ is not confined to picking one opinion and adopting it. Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source. So long as her finding is supported by substantial evidence, it is not subject to reversal. See MKW v. Commissioner, 2012 WL 2930461, *3 (W.D. La. 2012); French v. Commissioner, 2009 WL 249709 (W.D. La. 2009).

The ALJ found that Plaintiff had the RFC to perform light work subject to some limitations. Plaintiff must work in a clean, climate controlled environment, and she cannot drive vehicles or operate moving machinery. Most important to this appeal: "Mentally she can understand, remember and carry out simple task as demanded in jobs rated by the *Dictionary of Occupational Titles* at reasoning development level 2, but she cannot interact with the general public." The ALJ stated that she considered all of the evidence, including the report from Dr. Nelson and the assessment of Dr. Marsiglia. She afforded Dr. Marsiglia's findings great weight due to Marsiglia's consistency with Dr. Nelson's opinions and her expertise in disability determinations.

The ALJ determined at step four that Plaintiff could not perform any of her past relevant work. She then turned to step five, which asked whether Plaintiff has the ability to perform the demands of other jobs. The ALJ asked a vocational expert to assume a person with Plaintiff's age, education, and RFC. The VE testified that such a person could perform the demands of price marker or silver wrapper, both of which the Dictionary of Occupational

Titles ("DOT") define as light, unskilled work. Tr. 59-60. The silver wrapper job (DOT No. 318.687-018) has a specific vocational preparation level one, which means it requires a short demonstration only to teach a typical worker to learn the job. The price marker job (DOT No. 209.587-034) is a level two, which puts it in the category of jobs that require anything more than a short demonstration, up to and including one month of training.

**Issue One**

Plaintiff takes fault with various aspects of the ALJ's RFC and related question to the VE. She complains that the ALJ's incorporation of reasoning level 2 from the DOT is not a detailed functional finding but rather a conclusion in the guise of a finding. It is, in the court's experience, an unusual method of defining the degree of limitation, but it does not appear to be out of place in this context.

Appendix C of the DOT explains that reasoning development is part of the scale of general education development. A job rated for reasoning development level 1 requires the employee to apply common sense understanding to carry out simple one or two-step instructions. The employee also has to be able to deal with standardized situations with occasional or no variables. Level 2 requires an employee have the ability to apply common sense understanding to carry out "detailed but uninvolved written or oral instructions" and deal with problems involving a few concrete variables.

Testimony from a VE may provide substantial evidence at step five if the ALJ's question posed to the VE reasonably incorporates all limitations of the claimant that have been recognized by the ALJ. Bolling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). The ALJ

included the "reasoning development level" limitation in her question to the VE, and the VE responded immediately without expressing any uncertainty as to the degree of limitation the ALJ intended. The undersigned finds that the RFC and related question to the VE adequately conveyed the finding that Plaintiff was limited to jobs that required no more than the ability to carry out detailed but uninvolved instructions. The ALJ could have parroted the language in the reasoning development level definitions, but there was no need to do so when they were simply defined and obviously understood by the VE.

Plaintiff also complains that the RFC found by the ALJ did not adequately account for the moderate limitation in concentration, persistence, and pace that was mentioned by the ALJ in her step three analysis. Plaintiff cites a decision, Voyles v. Commissioner, 2011 WL 825711 (N. D. Tex. 2011), that found a question to a VE that limited the claimant to simple, routine, repetitive type tasks did not adequately encompass moderate limitations in the ability to maintain concentration, persistence, or pace.

A different approach was taken in Bordelon v. Astrue, 281 Fed. Appx. 418 (5th Cir. 2008), which held that the claimant showed no prejudice from a hypothetical question that omitted specific mention of such moderate limitations but reflected them by limiting the jobs to low stress and simple one to two-step instructions. The court found that this reflected that the ALJ reasonably incorporated the moderate concentration, persistence, and pace limitations such that the hypothetical question was proper. A number of district courts in this circuit have cited Bordelon and held that an RFC limited to simple work reasonably incorporates a moderate or even marked limitation in concentration, persistence, or pace.

Ricks v. Colvin, 2014 WL 333911 (W. D. La. 2014) (collecting cases).  Also, the limitations on which the RFC is based are not required to be included verbatim in the RFC or the hypothetical to the VE, so long as the decision shows that the ALJ considered those limitations in reaching the RFC determination.  Smith v. Colvin, 2014 WL 1407437, *4-5 (N. D. Tex. 2014) (also following Bordelon).

The undersigned is persuaded by those decisions and finds that the reference to simple tasks in the RFC and hypothetical question, especially when further explained by a specific reference to the reasoning development levels, adequately reflected the "moderate difficulties" in concentration, persistence or pace that the ALJ recognized based on Plaintiff's demonstration of mild impairment of concentration skills during oral testing.  Plaintiff is not entitled to relief on this claim.

**Duty to Develop the Record**

The regulations provide that a claimant has the responsibility to inform the Agency about or submit all evidence known to the claimant that relates to whether she is disabled.  20 C.F.R. § 404.1512(c).  The regulations also provide that the Agency will develop the claimant's complete medical history for at least the 12 months preceding the month in which she files her application, unless development of an earlier period is necessary.  The Agency "will make every reasonable effort to help you get medical reports from your own medical sources."  § 404.1512(d).  The regulations explain that every reasonable effort means that the Agency will make an initial request from the medical source and, if there is not a timely

response, "we will make one followup request to obtain the medical evidence necessary to make a determination." § 404.1512(d)(1).

Plaintiff indicated in her paperwork that she received treatment from Dr. Joseph Nida at the Minden Medical Center. Tr. 178. The Agency sent a request in January 2012 that explained the basis of Plaintiff's claim and requested that Dr. Nida provide all medical records from September 2005 to the present. Tr. 259. Dr. Nida responded with one X-ray report and some lab results. Tr. 260-62. The Agency sent a followup request in March 2012 that repeated the broad request for records and clearly identified Plaintiff by her full name and social security number. Dr. Nida's office returned the form with the box checked to indicate "No Patient Found." Tr. 277.

The record also contains a medical source statement completed by Dr. Nida. The table of contents labels it as a report submitted by Plaintiff's attorney in April 2012. Dr. Nida indicated on the form that Plaintiff had very limited ability to sit or stand/walk, had fairly significant limitations in her ability to lift or carry, and had some postural limitations. He indicated that she could use her right arm to reach overhead only 25 percent of the time, and she could use her right hand and fingers for work only 50 percent of the time. He checked a box to indicate that Plaintiff would have frequent interference with her attention and concentration when performing even simple work tasks and would likely be absent from work about four days per month. Tr. 287-89.

The ALJ said that she granted "no weight" to the opinions of Dr. Nida despite his history of treating Plaintiff since November 2010. The ALJ explained that his "scant clinical

examination records do not reflect findings of any impairments that reasonably can be expected to limit the claimant's" abilities to the "extreme degrees" he indicated. She also found "no cogent explanation" of why Plaintiff would be absent four days every month. On the other hand, the ALJ afforded great weight to the opinions of State Agency medical consultant Dr. Johnny Craig, who found that Plaintiff had some limitations but not to the extreme degree suggested by Dr. Nida. The ALJ noted that Dr. Craig also had access to a consultative pulmonary function study to which Dr. Nida did not have access. Tr. 16.

Plaintiff complains that the ALJ did not fulfill her duty to adequately develop the record with respect to Dr. Nida's treatment records, which led to the rejection of Nida's medical opinion. An ALJ "has the duty, accentuated in the absence of counsel, to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." Ware v. Schweiker, 651 F.2d 408, 414 (5th Cir. 1981). If the ALJ does not fulfill this duty, she does not have sufficient facts to make an informed decision, so the decision is not supported by substantial evidence. James v. Bowen, 793 F.2d 702, 704 (5th Cir. 1986).

A court may reverse the ALJ's decision if the claimant can show that (1) the ALJ failed to fulfill her duty to develop the record adequately and (2) that failure prejudiced the claimant. Sun v. Colvin, 793 F.3d 502, 509 (5th Cir. 2015). To show prejudice, the claimant must show that had the ALJ done her duty, the claimant could and would have adduced evidence that might have altered the result. Kane v. Heckler, 731 F.2d 1216, 1219-20 (5th Cir. 1984).

Plaintiff was represented by counsel at the hearing, and the Agency typically makes the administrative record available to counsel before the hearing so that counsel can ensure that all relevant records are included. Counsel sometimes ask at the hearing to keep the record open for the submission of missing or additional records, but there was no such request by counsel at this hearing. The ALJ issued her decision in December 2012 that pointed to the lack of the records from Dr. Nida. Plaintiff's counsel signed a request for review by the Appeals Council (Tr. 4-5), and the form stated that the claimant could submit additional evidence with the request for review. The form even explained how to request additional time to submit evidence, but there is no indication that Plaintiff ever submitted the records she faults the ALJ for not tracking down on her behalf. The Appeals Council denied the request for review in March 2014, and Plaintiff filed her appeal to this court.

The record indicates that the Agency took reasonable steps to develop the evidence by making two straightforward requests that Dr. Nida provide his medical records. Plaintiff, now represented by different counsel, has had years to locate the records, but she has yet to point to any additional records from Dr. Nida that, if presented to the ALJ, might have altered the result. Plaintiff has not demonstrated entitlement to relief on this claim.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be affirmed and that this complaint be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 24th day of February, 2016.

Mark L. Hornsby
U.S. Magistrate Judge